FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 OCT -7 PM 3:10

U.S. DISTRICT COURT
N.D. OF ALABAMA

James C. Moore Jr., ]
 ]
   Plaintiff(s), ]
 ]
vs. ] CV-01-N-2199-S
 ]
Eric R. Hamburg, ]
 ]
   Defendant(s). ]

ENTERED
OCT 0 7 2002

**Memorandum of Opinion**

**I.  Introduction**

     Before this court is the plaintiff's motion for summary judgment, filed June 14, 2002 (Doc. # 31). The plaintiff, James C. Moore (hereinafter "Moore") and defendant Eric R. Hamburg (hereinafter "Hamburg") individually guaranteed payment of a debt on behalf of SafeWear Technologies, L.L.C. ("hereinafter "SafeWear") to AmSouth Bank. Moore satisfied AmSouth's demand for payment and AmSouth assigned Moore its rights to collect on the agreements. Moore seeks indemnification for the principal amount of the debt individually guaranteed by Hamburg, as well as interest, attorneys' fees, and costs associated with collecting Hamburg's share. The court received Moore's motion for summary judgment and supporting evidence; Hamburg however, did not comply with the deadlines or formatting instructions established in the court's initial order for responding to Moore's motion for summary judgment. Accordingly, this court struck Hamburg's motion to file out of time on September 13, 2002 (Doc. #43). At this time, the court considers the issues ripe for

determination. Upon due consideration, the court finds that Moore's motion is due to be **GRANTED** in all respects.

## II.    Statement of Facts[1]

SafeWear, a Delaware corporation, or its predecessor was formed in July 1997. On or about September 8, 1997, SafeWear obtained a line of credit of $500,000 from AmSouth Bank located in Birmingham, Alabama, which was evidenced by a promissory note. The promissory note was secured by a security interest in all SafeWear's equipment, accessories and accounts. The promissory note was also secured by individual Continuing Guaranty Agreements signed by Moore and Hamburg.[2]

---

[1] In developing the statement of facts in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp., v. Cox*, 114 S. Ct. 900 (1995).

[2] In pertinent part the agreements provided:

> The Guarantors hereby further jointly and severally agree (a) to pay any and all Liabilities upon demand at anytime after maturity thereof (whether by acceleration or otherwise); (b) to be bound by all of the terms and provisions appearing on the face of any instrument or agreement evidencing, securing, guaranteeing, or executed in connection with any of the Liabilities and of any renewal instrument or agreement (the "Loan Documents") (including any terms waiving notice and agreeing to pay costs and expenses of collection in the event of default) just as though the Guarantors had signed such instrument or agreement;
>
> [. . .]
>
> The Guarantors jointly and severally hereby agree to indemnify and hold the Bank harmless against any loss or expense, including reasonable attorneys' fees and disbursements, that may result from any failure of any Obligor to pay any of the Liabilities when and as due and payable or that may be incurred by or on behalf of the Bank in enforcing payment of any of the Liabilities against any of the Guarantors or any of the Obligors.

(Doc. #37, Pl. Ex. A).

On or about December 1, 1997, SafeWear executed a Renewal Note to AmSouth Bank in the amount of $750,000, resulting in the cancellation of the September 8, 1997 note. This note was also secured by the aforementioned Continuing Guaranty Agreements executed by Moore and Hamburg, and contained the same terms as those found in the September 8, 1997 promissory note.

SafeWear borrowed money from AmSouth Bank from time to time pursuant to the above-mentioned documents. In March 2001, SafeWear ceased its operations and began to liquidate its assets. Subsequent to liquidation of the SafeWear assets, a deficiency in the amount of $212,738.25 remained on the guaranteed debt to AmSouth Bank.

On March 15, 2001, AmSouth Bank made demand upon Moore and Hamburg to pay the deficiency pursuant to their Continuing Guaranty Agreements. Hamburg has not paid any portion of the deficiency. On August 28, 2001, Moore paid AmSouth Bank the total amount owed, that is $212,738.25. Moore claims this payment was comprised of funds used to reduce the amount of debt owed by SafeWear, the personal funds used to reduce the amount of debt owed by SafeWear, and personal funds used to obtain an assignment/sale of all rights of AmSouth Bank in the aforementioned promissory notes and individual Continuing Guaranty Agreement signed by Hamburg.

### III.  Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party

asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239

F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150).

**IV.    Discussion**

Moore contends that AmSouth's assignment of the Continuing Guarantee Agreements entitles him to summary judgment and recovery of 61.29032% of the debt paid (including interest) (hereinafter this number will be rounded to 61%), attorney fees, and costs of the legal proceedings. Moore relies on three theories: (1) the assignment; (2) Alabama statutory law; and (3) Alabama common law. Because we find the assignment was valid and Alabama statutory law addresses all remaining questions, the court will not consider the common law argument.

**A. AmSouth's Assignment to Moore**

Moore paid AmSouth the full amount of the debt as reflected in the Continuing Guaranty Agreements, and AmSouth assigned Moore its rights to collect on the debt. An assignment is a transfer of property or another right from one person (the "assignor") to another ("the assignee"), which confers a complete and present right in the subject matter to the assignee. *See Green Tree Financial Corp., v. Channell*, 2002 WL 27994 (Ala. 2002) (noting that an assignee "steps into the shoes" of an assignor); *Nissan Motor Acceptance Corp. v. Ross*, 703 So. 2d 324 (Ala. 1997); *see also* George J. Bachrach and John V. Burch, *The Surety's Subrogation Rights*, *The Law of Suretyship* 445-49 (Edward G. Gallagher, Ed.

5

2000) (noting the validity of assignment rights in surety obligations). A valid assignment must contain clear evidence of the intent to transfer rights, it must describe the subject matter of the assignment, it must be clear and unequivocal and must be noticed to the obligor. *West v. Founders Life Assurance Co. of Florida*, 547 So. 2d 870, 871 (Ala. 1989); *Russell v. Birmingham Oxygen Service, Inc.*, 408 So. 2d 90, 93 (Ala. 1981) (noting the intent requirement); 6 *AmJur. 2d Assignments* § 113(1999) (listing the elements). Neither party disputes that AmSouth had the right to assign the contract and that the contract was a valid transfer.[3] Accordingly, this court will interpret the assignment "in accordance with the rules of construction governing contracts generally, the primary object being always to ascertain and carry out the intention of the parties." *Dill v. Blakeney*, 568 So. 2d 774, 778 (Ala. 1999) (Quoting 6A C.J.S. *Assignments* § 72 (1975)).

### B. Moore's Recovery for Payment of the Debt

The assigned documents do not specify how AmSouth would have apportioned liability between the parties.[4] Moore contends his liability should be limited to the share that he owned in SafeWear. Since Moore did not provide any cases which would indicate the court must follow this suggestion, the court looks to Alabama surety law for guidance.

---

[3] The court denied Hamburg's motion to file out of time. Though the document was not formally considered by the court, for purposes of this summary judgment, this court took note of points raised by the defense. This issue was not in Hamburg's brief. In fact the only objection in Hamburg's brief was that the law of Alabama did not allow the plaintiff to recover all of the debt owed. This is a mischaracterization of the plaintiff's claims and will be addressed *infra*.

[4] AmSouth did not indicate an interest in dividing up the amount so Hamburg testified:
Q. I mean, you understood in talking to Mr. Compton he wasn't going to accept partial payment from Mr. Moore and a partial payment from you. That was pretty clear, wasn't it?
A. Yes.
Q. He said, we want it all paid. And we can go against you; we can go against Mr. Moore; we can go against both of you; we can do anything we want to with regards to that?
A. Yes.

Alabama surety law governs situations where one party is forced to pay a debt that was the primary obligation of another, and which the latter ought to have paid to exonerate the former. *Moody v. Hinton*, 603 So. 2d 914, 912 (Ala. 1992) (Shores dissenting). The aforementioned situation mirrors the one at hand. The *Code of Alabama* § 8-3-42 (1975) provides in pertinent part:

> Sureties, whether bound on the contract or instrument with the principal debtor as joint or joint and several obligors or promisors, as accommodation drawers, acceptors, or endorsers of a bill of exchange or in any other manner, are entitled to a summary judgment against their principal and between each other ...
> (2) Between sureties:
>   a. A Surety who has paid the debt of his principal may recover of each of his cosureties their aliquot portion of the debt ...

*Id.* In addition, § 8-3-9 "enable[s] a surety discharging a joint debt ... to control the same against his cosureties for the purpose of compelling them to contribute their respective shares of the amount so paid by him." *Id.*

Although the parties signed two separate Continuing Guarantee Agreements, they both agreed to be liable for SafeWear's total debt and, therefore, operated as cosureties. *Kafka v. Pope*, 194 Wis. 2d 234, 533 N.W.2d 491 (Wis. 1995) ("it matters not, in a case of a debt whether the sureties are jointly and severally bound, or only severally; or whether their suretyship arises under the same obligations or instruments, if all the instruments are for the identical debt."); *see also* Peter A. Alces, *The Law of Suretyship*, ¶ 5.02 (interpreting Restatement (Third) of Suretyship and Guaranty (1995) explaining the cosurety relationship); 74 *Amjur 2d Suretyship* § 165 (1999) (same).

Strictly following § 8-3-42, Moore and Hamburg are liable for aliquot portions of the debt.[5] Nevertheless, read in concert with § 8-3-9, the law appears to allow for an equitable apportionment. Ideally, Moore and Hamburg would have placed this understanding in writing at the outset. Nevertheless, Moore's demand will not fail for want of a writing. As noted by Moore, "[i]t is very well settled that at law, as well as in equity, the question of contribution between sureties is to be settled on principles of equity and natural justice, and that the law courts administer the relief on the ground of an implied contract arising out of the equitable obligation." *Douglas v. Orman*, 218 Ala. 563 (1928); *Scott v. McGriff*, 132 So. 177, 178 (1930) (citing *Douglas* as "well settled" precedent); *Drummond v. Drummond*, 168 So. 428 (1936) (same); 18 C.J.S. *Contribution* § 8 (1990).[6] Another court summarized "[a]ny claim to contribution among the coguarantors is not based directly upon the instrument by which the coguarantors are bound to the creditor, but rests upon an implied obligation, equitable in character, growing out of the relationship of cosurety or coguarantor." *Nissenberg v. Felleman*, 162 N.E.2d 304, 307 (Mass. 1959); 74 *AmJur.2d Suretyship* § 179 (1999). The Restatement (Third) of Suretyship and Guaranty also lends support to this interpretation. Although section 57 indicates that shares among multiple obligors are usually

---

[5] An aliquot portion is "an even part of the whole." *Barron's Law Dictionary* 21 (1996)

[6] None of these cases specifically refer to the Alabama Code, nor are they cited in the annotated version. Nevertheless the *Code of Alabama* specifically discusses contribution in a surety context and the cited cases all address contribution in a surety context. Although the Code cites numerous provisions of American Law Reports, this court has chosen to interpret the statutory term "contribution" in accordance with applicable case law. Under either a statutory or "common law contribution" theory, the plaintiff is entitled to recover the same amount. Such a course is not precluded by the *Code of Alabama*. Specifically a case cited in the annotation to § 8-3-42 indicates that the statutory remedy is cumulative and does not prevent a common law action. *See Riley v. Stallworth*, 56 Ala. 481 (1876). Accordingly, even if Alabama statutory authority does not permit equitable apportionment, Alabama common law does.

divided evenly, in a comment it explains "[i]n many cases where there is no express agreement between cosureties, an agreement as to contributive shares can be implied by the circumstances. The circumstances justifying such a finding may relate either to the general relationship among the cosureties or to the circumstances surrounding the suretyship transaction." *Restatement (Third) of Suretyship and Guaranty* § 57 cmt C (2002).[7]

Moore has presented evidence that Hamburg owned 61% of SafeWear Enterprises and has attested to the proper calculation of the debt. (Doc. #37). Accordingly, to require Hamburg to pay only 50% of the amount originally owed to AmSouth would provide Hamburg with an inequitable windfall. The court therefore will grant judgment to Moore for 61% of the total, or $123,450.12.

In conclusion, the court finds there was an implied agreement to divide the shares according to the portions of Moore's and Hamburg's ownership in SafeWear.

---

[7] The example reads as follows:
To induce C to lend D Corporation $3,000, $S_1$, $S_2$, and $S_3$ agree to be cosureties with respect to this debt. $S_1$, $S_2$, and $S_3$ enter into no express agreement as to their contributive shares. $S_1$, $S_2$, and $S_3$ are the sole shareholders of D Corporation; $S_1$ owns 50 percent of the shares, $S_2$ owns 30 percent of the shares, and $S_3$ owns 20 percent of the shares. D defaults having paid none of the debt, with the result that $S_1$, $S_2$, and $S_3$ are liable to C for a total of $3,000. The fact finder may find an implied agreement that the cosureties' contributive shares are to be in proportion to their ownership interests. To induce C to lend D $3,000, $S_1$, $S_2$, and $S_3$ each agree to be secondary obligors with respect to D's obligation. Pursuant to $S_1$'s secondary obligation, $S_1$'s maximum liability to C is $1,500; pursuant to $S_2$'s secondary obligation, $S_2$'s maximum liability to C is $900; pursuant to $S_3$'s secondary obligation, $S_3$'s maximum liability to C is $600. $S_1$, $S_2$, and $S_3$ enter into no express agreement among themselves as to their contributive shares. D defaults, owing $100 to C. The fact finder may find an implied agreement from these circumstances that the cosureties' contributive shares are to be in proportion to their maximum individual liabilities, so that $S_1$'s contributive share is $50, $S_2$'s contributive share is $30, and $S_3$'s contributive share is $20.

9

### C. Costs and Fees

Moore demands attorney fees and costs of court. In Alabama, "attorney fees are recoverable as part of the costs of an action only where authorized by statute, when provided in a contract, or by special equity." *Buckly v. Seymour*, 679 So. 2d 220, 227 (Ala. 1996) (quoting *Subway Restaurants, Inc. v. Madison Square Assoc., Ltd.*, 613 So. 2d 1255 (Ala. 1993) (emphasis in original); *see also Dill v. Blakeney*, 568 So. 2d 774, 777 (indicating that an assignment which included a provision for attorney fees was acceptable unless a question of material fact arose as to its application). If awarded, attorney fees are calculated by "multiplying the number of hours reasonably expended on the litigation times the reasonable rate." *Johnson v. U.S. Mortgage Co.* 991 F. Supp. 1302, 1307-08 (M.D. Ala. 1997); *see also Union Fidelity Ins. Co. v. McMcurdy*, 781 So. 2d 186, 192 (Ala. 2000) (listing several factors which aid in the analysis of what constitutes a "reasonable" fee).

This court sees no ambiguity in the agreement (which is recited *supra*), which clearly establishes liability for attorney fees and costs of court. Moore's proceedings against Hamburg are precisely the sort which could have been reasonably anticipated by the parties at the time of signing. Accordingly, this court holds that Moore may recover his reasonable attorney fees as established through records kept on file with this court.

The Continuing Guaranty Agreements also entitles AmSouth to recover losses or expenses recoverable from enforcing payment of the liabilities. As with attorney fees, costs are recoverable so long as the contract is not ambiguous or such expenses could not reasonably be anticipated. Again, this court does not find the terms to be ambiguous and grants summary judgment in favor of Moore for reasonable costs.

In conclusion attorney fees and costs of court are taxable to Hamburg because they were clearly set forth in the Continuing Guaranty Agreements which were validly assigned to Moore. Moreover, Moore is entitled to the costs because the costs demanded by Moore are those which could reasonably have been anticipated by the parties.

**V.    Conclusion**

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 7th of October, 2002.

                                            EDWIN NELSON
                                  UNITED STATES DISTRICT JUDGE